Jennifer F. Novak (SBN 183882)
Email: novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775
Facsimile: (310) 957-2624

Colin Kelly (SBN 266956)
Sarah Spinuzzi (SBN 305658)
Email: colin@coastkeeper.org
Email: sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

*Attorneys for Plaintiff*
ORANGE COUNTY COASTKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JUAN CAPISTRANO, a California municipal corporation; BLENHEIM FACILITY MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

Orange County Coastkeeper ("Coastkeeper" or "Plaintiff"), by and through its counsel, hereby alleges:

# I.  <u>PRELIMINARY STATEMENT</u>

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Clean Water Act. 33 U.S.C. §§ 1251 *et seq.* This Court has subject matter jurisdiction over the parties and this action because it arises under federal law. The events giving rise to Plaintiff's action and the violations described in this Complaint occurred, and continue to occur, within this judicial district. *See* 33 U.S.C. § 1365(a)(1).

2.      This action arises out of the unlawful pollution of San Juan Creek caused by Defendant City of San Juan Capistrano ("City") and Defendant Blenheim Facility Management, LLC ("Blenheim") (collectively "Defendants"), the owners and/or operators of the Rancho Mission Viejo Riding Park at San Juan Capistrano ("Riding Park") and the adjacent "Arizona Crossing" that runs through San Juan Creek (the "Creek"). The Riding Park is a venue for equestrian events that has the capacity to board up to 1,100 horses. The Arizona Crossing is a manmade road that runs across San Juan Creek, connecting the Riding Park to Reata Park on the other side of the Creek.

3.      Defendants have operated the Riding Park and Arizona Crossing in violation of the Clean Water Act by: failing to comply with the City of San Juan Capistrano's municipal storm water permit; failing to obtain permits from the United States Army Corps of Engineers ("Army Corps") for dredge and fill activities within Army Corps' jurisdiction; and failing to obtain water quality certification from the State of California before disturbing San Juan Creek and its banks. These failures are exemplified by Defendants' discharges of horse manure and bedding, sediment, trash, fertilizers and other "non-stormwater" into San Juan Creek; the discharge of polluted storm water that comes into direct contact with hundreds of stabled horses directly into San Juan Creek; and conducting heavy industrial repairs to the Arizona Crossing and the Creek's banks without federal or state required permits in an area designated as open space and preserved by a conservation easement.

4.      The Clean Water Act enables non-profit organizations such as Orange County Coastkeeper to file lawsuits to enforce the Clean Water Act. 33 U.S.C. § 1365.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

5.     Based upon its investigation to date and discussions with Defendants, Coastkeeper alleges that Defendants are responsible for more than 1,825 individual violations of the Clean Water Act. Defendants' acts and omissions have harmed, and continue to harm, both the mission of Plaintiff Orange County Coastkeeper and the interests of its members who use San Juan Creek, its surrounding areas, and Doheny State Beach, where the Creek meets the Pacific Ocean.

6.     Plaintiff Coastkeeper seeks declaratory and injunctive relief, as well as civil penalties, to end the unlawful acts and omissions of Defendants that continue to cause irreparable damage to water quality. Plaintiff also seeks recovery of reasonable costs of suit, including attorney, witness, expert, and consultant fees, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d).

## II.     JURISDICTION AND VENUE

7.     This is a citizen enforcement action brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, more commonly called the Clean Water Act ("Clean Water Act" or "Act"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and  28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief under the Constitution and laws of the United States).

8.     Coastkeeper sent a letter by certified mail to Defendants City of San Juan Capistrano and Blenheim Facilities Management, LLC on March 31, 2017 ("First Notice Letter"). In the First Notice Letter,  Coastkeeper notified Defendants of their violations of the Clean Water Act and of Coastkeeper's intention to file suit for such violations after sixty (60) days as required by 40 C.F.R. § 135.2(a)(1). A copy of the First Notice Letter is attached as Exhibit A and is incorporated here by reference.[1]

---

[1] Coastkeeper sent a second notice letter on May 4, 2017 alleging additional violations of the Clean Water Act, and will amend this Complaint after the notice period has expired.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

9.     The Notice Letter was also sent to the necessary state and federal regulatory agencies, as identified on Exhibit A, and as required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).

10.     More than sixty (60) days have passed since the First Notice Letter was sent to Defendants and the regulatory agencies.

11.     Coastkeeper is informed and believes that the federal or state agencies have neither commenced or are diligently prosecuting any action to redress the violations alleged in the First Notice Letter and in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B).

12.     This action is not barred by any prior administrative penalty under Section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Coastkeeper's claims occurred in this judicial district, and under 33 U.S.C. § 1365(c)(1) because the sources of the violations described in this Complaint are located within this judicial district.

14.     Plaintiff seeks relief from Defendants' violations of the procedural and substantive requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

## III.   PARTIES

### A.   Orange County Coastkeeper

15.     Plaintiff Orange County Coastkeeper ("Coastkeeper" or "Plaintiff") is a non-profit public benefit corporation organized under the laws of the State of California. Coastkeeper's office is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

16.     Coastkeeper has over 2,000 members who live and/or recreate in and around Orange County, including at San Juan Creek, San Juan Creek Mouth, and Doheny State Beach. Coastkeeper's mission is to promote and restore water resources that are drinkable, fishable, swimmable, and sustainable. To further our mission, Coastkeeper actively seeks federal and state agency implementation of the Clean Water Act and,

1   where necessary, directly initiates enforcement actions on behalf of itself and our

2   members.

3        17.    Coastkeeper is an established stakeholder focused on Orange County's water

4   quality, as demonstrated by its status as the only Orange County environmental non-

5   governmental organization that negotiated the storm water permit at issue in this case. As

6   recently as May 8, 2017, Coastkeeper commented to state regulators on the terms of that

7   permit's implementation.

8        18.    In addition, Coastkeeper's members use and enjoy the San Juan Creek and

9   its tributaries, to swim, birdwatch, picnic, fish, hike, wade, bike, horseback ride, and

10  conduct scientific study and research, and/or for aesthetic enjoyment in and around these

11  waters.

12       19.    Coastkeeper's members use and enjoy the coast near the San Juan Creek

13  Mouth and Doheny State Beach to sail, swim, boat, kayak, windsurf, birdwatch, picnic,

14  fish, paddle, standup paddleboard, surf, wade, and conduct scientific study and research,

15  and/or for aesthetic enjoyment in and around these waters.

16       20.    Defendants' actions, individually, collectively, and in combination with the

17  activities of other landowners adjacent to San Juan Creek, result in numerous injuries to

18  Coastkeeper's interests, such as: loss, destruction or damage to wetlands and waterways;

19  diminished aesthetic enjoyment; increased flooding; loss of open space and habitat for

20  wildlife, including wading birds and federally protected species like Southern California

21  Coast Steelhead; degraded water quality; and diminished quality of life.

22       21.    Defendants' failure to comply with the procedural and substantive

23  requirements of the Clean Water Act negatively affects and impairs Coastkeeper's

24  members' use and enjoyment of these waters.

25       22.    The interests of Coastkeeper's members have been, are being, and will

26  continue to be adversely affected by Defendants' failure to comply with the Clean Water

27  Act. Continuing commission of the acts and omissions alleged in this Complaint will

28  irreparably harm Coastkeeper's members, for which harm they have no plain, speedy, or

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

adequate remedy at law. Coastkeeper's members will continue to be harmed until Defendants bring their activities into compliance with the law.

23.    The relief sought herein will redress the harms to Coastkeeper caused by Defendants' activities.

**B.    The City of San Juan Capistrano**

24.    Defendant the City of San Juan Capistrano is a municipality incorporated under the laws of the State of California.

25.    The City owns the Rancho Mission Viejo Riding Park at San Juan Capistrano, located at 27174 Ortega Highway, San Juan Capistrano, California 92675.

26.    The City also owns and/or operates Reata Park located at 28632 Ortega Highway, San Juan Capistrano, California 92675.

27.    The Riding Park and Reata Park are on opposite sides of San Juan Creek, connected by a manmade access way crossing through San Juan Creek (the "Arizona Crossing"). The City owns and/or operates the Arizona Crossing.

28.    At all times relevant to this Complaint, the City has owned, and is legally responsible for, the Riding Park, Reata Park, and the Arizona Crossing.

**C.    Blenheim Facility Management, LLC**

29.    Defendant Blenheim Facility Management, LLC is an active Delaware limited liability company with its principal place of business located at 30753 La Pata Avenue, San Juan Capistrano, California 92675.

30.    The name and address for the Registered Agent for Blenheim Facility Management, LLC is Rebecca Ross, located at 30753 La Pata Avenue, San Juan Capistrano, California 92675.

31.    The address for Registered Agent is an invalid address, specifically unable to receive service of process.

32.    The Entity Mailing Address for Blenheim is listed on the California Secretary of State's website as: P.O. Box 639, San Juan Capistrano, California 92693.

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

33.     Coastkeeper has engaged in communication with Melissa Brandes, Vice President of Operations and Marketing for Blenheim, regarding the contents and existence of the Notice Letter.

34.     Coastkeeper is also informed, and therefore believes, that the City and Blenheim have proposed a joint defense agreement to this action as evidenced by Exhibit B, a City Council agenda report set for consideration on June 6, 2017.

35.     Coastkeeper believes, and therefore alleges that Blenheim  received the First Notice Letter, and has actual notice of the substantive contents of the First Notice Letter.

## IV.   **FACTUAL BACKGROUND**

### A.     **The Riding Park**

*Activities and Geological Features*

36.     A map taken from Google Maps depicting the Riding Park and Arizona Crossing is attached as Exhibit C to this Complaint for the Court's reference.

37.     On January 20, 2010, the City purchased the Riding Park located at 27174 Ortega Highway, including a parcel designated as the "Creek Open Space" parcel along the northwest portion of the Riding Park that includes a portion of San Juan Creek and its creek bank.

38.     Blenheim has managed the Riding Park since 2005, and has been subject to a management agreement with the City for all times relevant to this litigation.

39.     Based upon information and belief, Coastkeeper alleges that Blenheim is responsible for the day-to-day management of the Riding Park, including its maintenance before, during, and after equestrian events, as well as outside of the equestrian season.

40.     The Riding Park is comprised of approximately 60 acres, and is a multi-use sports and exhibition facility that hosts equestrian events, soccer events, a rodeo, and other community events.

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

41.   The Riding Park provides stables, show and warm-up arenas, trailer, truck, and RV parking, horse wash areas, temporary bathroom facilities, food trucks, and other similar facilities common to equestrian events.

42.   Coastkeeper is informed and believes, and thereon alleges, the Riding Park is most commonly used for equestrian events, and in 2016, hosted at least 23 equestrian events over a total of 127 days.

43.   Coastkeeper is informed and believes, and thereon alleges, that the 2016 year is representative of the typical number of events hosted at the Riding Park from 2010 to the present.

44.   Coastkeeper is informed and believes, and thereon alleges that the Riding Park has capacity to board up to approximately 1,100 horses at a time on approximately 10 acres of the Riding Park facility.

45.   Exhibit D is a true and correct copy of a jurisdictional delineation map produced by the Army Corps, showing the Riding Park's proximity to waters subject to the Clean Water Act (as shown by the blue lines and shaded area on the map, near the label "1-12").[2]

46.   Water flows from off site enter the Riding Park through natural and manmade tributaries as shown in Exhibit D.

47.   The tributaries shown in Exhibit D ("onsite tributaries") are waters of the United States, and the Army Corps has specifically designated the natural channels and drainage at the Riding Park as being within its jurisdiction.

48.   The California Regional Water Quality Control Board, San Diego Region, ("Regional Board") has designated such natural drainage patterns and features as part of the City's Municipal Separate Storm Sewer System ("MS4"). Further, the City has designated San Juan Creek as part of its MS4 system.

/ / /

---

[2] U.S. Army Corps of Engineers, *San Juan Creek and Western San Mateo Creek Watershed Special Area Management Plan (SAMP) Environmental Impact Statement*, Figure 4.1.2-7a. (Nov. 2005).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

49.     A map of the City's MS4 system is attached as Exhibit E. *See* South Orange County Water Quality Improvement Plan, Appendix A, Figure A-5 (April 1, 2017).

50.     The Riding Park is subject to flooding from the conveyance system shown in Exhibits C and D, as well as from occasional high waters from San Juan Creek that overflow its banks.

*Non-stormwater and Stormwater Pollution*

51.     Defendants have been, and are continually, discharging pollutants into San Juan Creek and onsite tributaries.

52.     The discharged pollutants include, but are not limited to, "non-storm water," such as horse manure, bedding, sediment, equine footing, trash, and other materials associated with equine operations, as well as polluted run-off and storm water.

53.     Based upon information obtained from the Regional Board and the County of Orange, Coastkeeper is informed, believes, and thereon alleges that the Riding Park discharged process wastewater from its horse wash racks via PVC pipes directly into San Juan Creek from approximately May 1, 2006 until at least September 3, 2016.

54.     After the Riding Park removed the PVC discharge pipes, process wastewater from horse wash racks has continued to discharge to San Juan Creek and did so on or about March 29, 2017, April 17, 2017, May 3, 2017, and May 6, 2017.

55.     Coastkeeper is informed and believes, and thereon alleges that process wastewater from the wash racks discharged directly into San Juan Creek from 3,000 gallon above-ground storage tanks intended to contain process wastewater on or about May 3, 2017.

56.     Coastkeeper is informed and believes, and thereon alleges that process wastewater from the wash racks is reasonably likely to continue to be discharged directly into San Juan Creek from onsite 3,000 gallon above-ground wastewater storage tanks in the future.

57.     Defendants discharged, or allowed the discharge of, trash from the Riding Park, including plastic cups, paper plates, equine medicine applicators, feed bags, and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

other forms of trash on or about March 29, 2017, April 17, 2017, May 3, 2017, and May 6, 2017.

58.     Trash has been discharged from the Riding Park to the Creek and the jurisdictional waters in the past and, based upon information and belief, Coastkeeper alleges that Defendants will continue to discharge trash generated at future events hosted at the Riding Park.

59.     The equestrian event rings surrounded by onsite tributaries are covered with equestrian footing material, which consists of sand, ground rubber, and other unknown textiles. This footing is discharged from the event arenas into onsite tributaries during dry weather.

60.     Coastkeeper is informed and believes, and thereon alleges, that equestrian footing is tracked around the Riding Park and is discharged into the onsite tributaries and San Juan Creek during rain events.

61.     Upon information and belief, Coastkeeper alleges that piles of manure and used horse bedding containing byproducts such as urine and trash were pushed into the creek bank on or about March 29, 2017.

62.     Upon information and belief, Coastkeeper alleges that manure and used horse bedding are reasonably likely to continue to be discharged into San Juan Creek every time the Riding Park hosts equestrian events.

63.     Based upon physical observations at the Riding Park, Coastkeeper believes and thereon alleges that when rain falls onto the Riding Park, it runs through the stable and manure areas towards San Juan Creek.

64.     Upon information and belief, Coastkeeper alleges that storm water comes into direct contact with manure and bedding from the stables, which have only dirt floors and temporary walls. Water then flows towards the southwest into San Juan Creek, taking along with it pollutants such as phosphorus, nitrogen, trash, and bacteria.

65.     Upon information and belief, Coastkeeper alleges that each time it rains, the Riding Park discharges polluted storm water into San Juan Creek.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

66.     Based upon its independent investigations, Coastkeeper is informed and believes, and thereon alleges that water trucks discharge process wastewater onto exhibition rings without a nutrient management plan.

67.     Upon information and belief, Coastkeeper alleges that the Riding Park operates without protocols for applying manure, litter, or process wastewater in accordance with a nutrient management plan for the facility.

68.     Upon information and belief, Coastkeeper alleges that the Riding Park operates without sufficient manure and process wastewater storage.

69.     Upon information and belief, Coastkeeper alleges that the Riding Park operates without chemical and contaminant management of manure, litter, process wastewater, and treatment.

70.     Upon information and belief, Coastkeeper alleges that the Riding Park operates without protocols for testing manure, litter, process wastewater, and soil.

71.     Upon information and belief, Coastkeeper alleges that Defendants operate the Riding Park without utilizing best management practices for reduction and control of runoff and storm water to the maximum extent practicable.

### *Dredge and Fill Activities*

72.     Upon information and belief, Coastkeeper alleges that Defendants are using sand and other fill material, including trash debris, to grade the portion of the Riding Park that shares its border with the San Juan Creek bank.

73.     Upon information and belief, Coastkeeper alleges that Defendants are depositing sand and other fill material, including trash debris, into San Juan Creek as a result of grading activities on the portion of the Riding Park bordering San Juan Creek.

74.     Coastkeeper alleges that Defendants deposited fill material into San Juan Creek along the portion of the Riding Park that borders San Juan Creek on or about March 22, 2017 and on or about May 1, 2017.

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

75.     Upon information and belief, Coastkeeper alleges that Defendants will continue to deposit fill material into San Juan Creek along the portion of the Riding Park that borders San Juan Creek due to ongoing sloughing along that portion of the property.

76.     Defendants' fill activities are occurring in, and impacting, waters of the United States subject to the Clean Water Act.

77.     Upon information and belief, Coastkeeper alleges that Defendants are performing fill activities along the San Juan Creek bank in a parcel that is protected open space, where such activities are prohibited.

78.     Upon information and belief, Coastkeeper alleges that Defendants are performing fill activities along the San Juan Creek bank without required permits or letters of permission from the Army Corps.

79.     Upon information and belief, Coastkeeper alleges that Defendants are performing fill activities along the San Juan Creek bank without required water quality certification from the Regional Board.

80.     Upon information and belief, Coastkeeper alleges that Defendants are conducting dredge and fill activities in the onsite tributaries shown in Exhibit D.

81.     The onsite tributaries surround equestrian event rings at the Riding Park.

82.     Upon information and belief, Coastkeeper alleges that Defendants perform dredge and fill activities to maintain the event rings surrounded by the onsite tributaries.

83.     The onsite tributaries are waters of the United States subject to the Clean Water Act.

84.     Upon information and belief, Coastkeeper alleges that Defendants are performing dredge and fill activities in the onsite tributaries without required permits or letters of permission from the Army Corps.

85.     Upon information and belief, Coastkeeper alleges that Defendants are performing dredge and fill activities in the onsite tributaries without required water quality certification from the Regional Board.

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

**B.   The Arizona Crossing**

86.   On January 20, 2010, the City acquired the Arizona Crossing that connects the Riding Park to Reata Park.

87.   The Arizona Crossing is a manmade road that runs through San Juan Creek, and is designed to be covered with water from the Creek during times of heavy flow.

88.   Upon information and belief, Coastkeeper alleges that the Arizona Crossing was damaged by a severe rain storm during the winter of 2009/2010, requiring repair.

89.   Upon information and belief, Coastkeeper alleges that the City, through agents, employees, and contractors, repaired the Arizona Crossing in 2012 through dredging and filling activities.

90.   Upon information and belief, Coastkeeper alleges that these filling activities have resulted in the loss or degradation of more than 0.1 acres of jurisdictional waters of the United States.

91.   Upon information and belief, Coastkeeper alleges that the City did not obtain permits required under the Clean Water Act from the Army Corps for the repairs to the Arizona Crossing in 2012.

92.   Upon information and belief, Coastkeeper alleges that the City did not obtain certification required under the Clean Water Act from the Regional Board for the repairs to the Arizona Crossing in 2012.

93.   The unpermitted discharges are composed of materials that are unsuitable for use as fill material, including, but not limited to, sheet metal, concrete blocks, corrugated metal pipes/culverts, uncompacted debris, asphalt, trash, and poured concrete.

94.   During the heavy rainfall events that occurred during the winter of 2016/2017, the Arizona Crossing was again damaged.

95.   The Arizona Crossing is currently closed due to damage caused by the heavy rainfall events that occurred during the winter of 2016/2017.

96.   Based upon conversations between Coastkeeper staff and City Staff, Coastkeeper is informed and believes, and thereon alleges that the City is substantially

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

likely to again conduct repair activities without permits or letters of permission required under the Clean Water Act from the Army Corps, and that such repairs would require the use of heavy equipment to remove the large amounts of asphalt, concrete, fencing, and other materials that have discharged into the Creek from the Arizona Crossing.

97.     Based upon conversations between Coastkeeper staff and City Staff, Coastkeeper is informed and believes, and thereon alleges that the City is substantially likely to again conduct repair activities without certification legally required under the Clean Water Act from the Regional Board.

**C.     San Juan Creek**

*Description*

98.     Defendants are discharging pollution from the Riding Park and the Arizona Crossing into San Juan Creek.

99.     San Juan Creek is a water of the United States subject to the protections of the Clean Water Act.

100.    San Juan Creek is also designated by the Regional Board as part of the City's MS4.

101.    The San Juan Creek watershed encompasses a drainage of approximately 176 square miles and extends along an East-West axis from the Cleveland National Forest in the Santa Ana Mountains to the Pacific Ocean at Doheny State Beach near Dana Point Harbor.[3]

102.    As shown on Exhibit C, San Juan Creek divides the Riding Park and Reata Park, with the Riding Park on the south side and Reata Park on the north side, connected by the Arizona Crossing constructed in the Creek.

*Environmental Resources and Threats to Water Quality*

103.    San Juan Creek and the adjacent estuarine and riparian habitats support a wide variety of flora and fauna, including endangered species such as the Pacific pocket

---

[3] U.S. Army Corps of Engineers, South Pacific Div., *Record of Decision for Revoking the Use of Selected Nationwide Permits within the San Juan Creek/Western San Mateo Creek Watersheds for the Special Area Management Plan Orange County, Cal.*, 1 (July 2010).

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

mouse, the Southern California Coast Steelhead, the Quino checkerspot butterfly, the southwestern willow flycatcher, and many other species.

104.   Portions of San Juan Creek have specifically been identified as critical habitat for a Southern California Coast Steelhead Biogeographic Population Group ("Steelhead Population Group"). The National Marine Fisheries Service's species Recovery Plan identified threats to the Steelhead Population Group's restoration efforts in San Juan Creek and concluded that culverts were a "very high threat," and that dams, surface water diversions, and roads are "medium threat" sources.[4]

105.   Physical modification of road crossings between estuary and upstream spawning and rearing habitats and the passage of smolts and kelts downstream to the estuary and ocean are specifically identified critical recovery actions for the Southern California Coast Steelhead.[5]

106.   The Regional Board has designated several "beneficial uses" for San Juan Creek and the water bodies into which it drains. San Juan Creek's existing beneficial uses include: agricultural supply, industrial service supply, contact water recreation, non-contact water recreation, warm freshwater habitat, cold freshwater habitat, and wildlife habitat. Likewise, the beneficial uses on the San Juan Creek Mouth, where San Juan Creek meets the Pacific Ocean, includes contact water recreation, non-contact water recreation, wildlife habitat, rare, threatened, or endangered species, marine habitat, migration of aquatic organisms, and shellfish harvesting. *Water Quality Control Plan, San Diego Region, Regional Water Quality Control Board, San Diego Region* ("Basin Plan"), Tables 2-2, 2-3 (updated May 17, 2016).

107.   Since water quality for these uses has not been attained in San Juan Creek, the Regional Board has designated the water body as being "impaired" under Section 303(d) of the Clean Water Act. 33 U.S.C. § 1313(d).

---

[4] National Marine Fisheries Service – Southwest Regional Office, *Southern California Steelhead Recovery Plan Summary*, 18 (Jan. 2012).

[5] National Marine Fisheries Service, *Southern California Steelhead Recovery Plan*, Table 13-3, 13-20 (Jan. 2012).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

108.   The waters of San Juan Creek downstream of the Riding Park and Reata Park are listed under Section 303(d) as impaired for pollutants including, but not limited to, Indicator Bacteria, Phosphorus, Total Nitrogen as N, Toxicity, DDE, and Selenium.

109.   The discharge of storm water carrying the byproducts of the Riding Park, including horse waste, bedding material, feed, metals, trash, and other materials contributes to, and threatens, San Juan Creek and downstream receiving waters.

110.   The illegal discharge of non-stormwater, including manure, sediment and other fill material, construction wastes, debris, and other material into San Juan Creek also contributes to the impairment of the receiving waters.

## V.   STATUTORY AND REGULATORY BACKGROUND
### A.   The Clean Water Act, State Regulation, and Relevant Permitting Provisions

111.   Congress passed the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and with the "interim goal" that wherever attainable, "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water achieved by July 1, 1983." 33 U.S.C. § 1251(a)(2).

112.   Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with a permit issued pursuant to Clean Water Act Sections 402 or 404. 33 U.S.C. §§ 1342, 1344.

113.   Section 402 of the Clean Water Act establishes National Pollutant Discharge Elimination System ("NPDES") permits issued by EPA, or an EPA-delegated State, to achieve the goals stated in Section 301(a) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342(b).

114.   EPA has delegated its NPDES permitting authority to the State of California.

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

115.   The California Water Code vests the State Water Resources Control Board ("State Board") and the State's nine regional water quality control boards with primary responsibility for regulating state water quality. Cal. Water Code §§ 13001, 13050(a)-(b), 13200. The San Juan Creek watershed, and the Pacific Ocean drainages from this watershed, fall within the jurisdiction of the Regional Water Quality Control Board for the San Diego Region. *Id.* 13200(f).

116.   Each violation of an NPDES permit – and each discharge of a pollutant that is not authorized by an NPDES permit – is a violation of the Clean Water Act and its implementing regulations and is grounds for enforcement actions, including citizen enforcement seeking civil penalties. 33 U.S.C. §§ 1311(a); 1342(a); 1365(a); 1365(f)(6); 40 C.F.R. § 122.41(a).

**B.     NPDES Permits – Municipal Separate Storm Sewer Sytem Permitting**

117.   Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p), establishes a permitting framework to regulate municipal discharges. 33 U.S.C. § 1342(a), (p).

118.   A municipal separate storm sewer system ("MS4") is a conveyance or system of conveyances—including roads with drainage systems; municipal streets, catch basins; curbs; gutters; ditches; man-made channels; and storm drains—owned or operated by a state, city, or town that is designed or used for collecting or conveying storm water and that discharges to waters of the United States. *See* 40 C.F.R. § 122.26(b)(8)(i)-(ii)(Dec. 21, 2015); *see also* 40 C.F.R. § 122.26(B)(18) (Dec. 21, 2015).

119.   MS4s are point sources that are subject to NPDES permitting requirements under the Clean Water Act and its implementing regulations. *See* 33 U.S.C. § 1311(a); 33 U.S.C. § 1342(p); 33 U.S.C. § 1362(12)(A); 40 C.F.R. § 122.2 (Aug. 28, 2015).

120.   The Regional Board's NPDES Permit for MS4s identifies twelve Orange County Copermittees, including the City, as well as Copermittees in San Diego and Riverside Counties as responsible for meeting the terms of the Permit. California Regional Water Quality Control Board San Diego Region, Order No. R9-2013,0001, as amended by Order Nos. R9-2015-0001 and R9-2015-0100, NPDES Permit No.

CAS0109266, Waste Discharge Requirements for Discharges from the Municipal Separate Storm Sewer Systems (MS4s) Draining the Watersheds within the San Diego Region, adopted May 8, 2013, effective as to Orange County on April 1, 2015 (the "2013 MS4 Permit").

121.   The current MS4 Permit, adopted in 2013, is the fourth generation permit for the City's MS4 discharges. The previous MS4 Permit applicable to the City was adopted in 2009.

122.   San Juan Creek, San Juan Creek Mouth, and the Pacific Ocean are "waters of the United States" as defined in the Clean Water Act and its implementing regulations. *See* 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2 (Aug. 28, 2015).

123.   The MS4 Permit recognizes that "historic and current development makes use of natural drainage patterns and features as conveyances for runoff." 2013 MS4 Permit, Finding 11. Further, "[r]ivers, stream and creeks in developed areas used in this manner are part of the [City's] MS4 regardless of whether they are natural, anthropogenic, or partially modified features." *Id.*

124.   San Juan Creek is a creek in the developed area of the City's jurisdiction and is "both an MS4 and receiving water." *See* 2013 MS4 Permit, Finding 11.

125.   MS4 Permit violations are violations of the Clean Water Act and its implementing regulations and are grounds for enforcement under the Act, including citizen enforcement actions seeking civil penalties. 2013 MS4 Permit, Standard Permit Provisions I, and Attachment B 1.a.; *see also* 33 U.S.C. § 1365(a); 40 C.F.R. § 122.41(a) (Dec. 21, 2015).

### 1.   Discharge Prohibition on Non-Stormwater Discharges into MS4s

126.   The MS4 Permit requires that the City "effectively prohibit" non-stormwater discharges into the MS4 through the implementation of a Jurisdictional Runoff Management Plan, unless such discharges are authorized by a separate NPDES permit. 2013 MS4 Permit, Provision A.1.b.; 2009 MS4 Permit, Discharge Provisions B.1.; *see also* 2013 MS4 Permit, Findings 15.

127.   The MS4 Permit requires the City's Jurisdictional Runoff Management Plan to implement "a program to actively detect and eliminate illicit discharges and improper disposal into the MS4, or otherwise require the discharger to apply for and obtain a separate NPDES permit." 2013 MS4 Permit, Provision E.2; 2009 MS4 Permit, Program Provisions F.4; *see also* 40 C.F.R. § 122.26(d)(2)(iv)(B).

128.   An "illicit discharge" is "any discharge to a [MS4] that is not composed entirely of storm water and is not covered by an NPDES permit." 2013 MS4 Permit, Attachment F-39; 2009 MS4 Permit, Attachment C-6; *see also* 40 C.F.R. § 122.26(b)(2).

129.   The Illicit Discharge Detection and Elimination program must be implemented in accordance with previously adopted strategies (a water quality improvement plan) and include certain detailed requirements to achieve compliance with non-storm water discharge prohibitions and receiving water limitations. 2013 MS4 Permit, Provision E.2., Provision A.4.

130.   The City's Illicit Discharge Program must include specific measures to prevent and detect illicit discharges to the MS4. These measures include:

    a.    including and maintaining an accurate and updated geographic informational system ("GIS") map of its MS4 that, among other requirements, identifies all segments of the MS4 owned, operated, and maintained by the City. 2013 MS4 Permit, Provision E.2.b.(1); 2009 MS4 Permit, Program Provisions F.4.b;

    b.    using the City's "personnel and contractors to assist in identifying and reporting illicit discharges and connections during their daily employment activities." 2013 MS4 Permit, Provision E.2.b.(2); *see also* 2009 MS4 Permit, Program Provisions F.4.a.(2)(b);

    c.    conducting field screening, including visual observations, of portions of its MS4 to detect non-storm water and illicit discharges and connections to the MS4. 2013 MS4 Permit, Provision E.2.c.; 2009 MS4 Permit, Program Provisions F.4.a.(2)., F.4.d; and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

d.    including enumerated measures to investigate and eliminate illicit discharges to the MS4. 2013 MS4 Permit, Provision E.2.d.; 2009 MS4 Permit, Program Provisions F.4.e-f.

131.   The City is required to prioritize an investigation into non-stormwater or illicit discharges when, as here, pollutants identified with those discharges are identified as causing or contributing to receiving water impairments or impacting environmentally sensitive areas within the city.  2013 MS4 Permit, Provision E.2.d(1)(a-b); *see also* 2009 MS4 Permit, Program Provisions F.4.e.

132.   When illicit discharges and connections are known to the City, it must use its legal authority to eliminate them. 2013 MS4 Permit, Provision E.2.d(3)(a); *see also* 2009 MS4 Permit, Program Provisions F.4.g.

**2.    Discharge Prohibition on Discharges that Cause or Contribute to Violations of Water Quality Standards**

133.   The MS4 Permit prohibits the City discharging from its MS4 "in a manner causing, or threatening to cause, a condition of pollution, contamination, or nuisance in receiving waters of the state ("Discharge Prohibition A.1.a")." 2013 Permit, Provision A.1.a.; 2009 MS4 Permit, Discharge Provisions A.1.

134.   The MS4 Permit also prohibits MS4 discharges from causing or contributing to a violation of water quality standards, including those in the Basin Plan.  2013 Permit, Provision A.2.a.; *Id.* at A.2.a.(1); 2009 MS4 Permit, Discharge Provisions A.3.

135.   Unless otherwise authorized or approved by the Regional Board, the MS4 Permit and Basin Plan prohibit:

a.    the discharge of waste to land, except as authorized by waste discharge requirements. 2013 MS4 Permit, Attachment A 1.2; 2009 MS4 Permit, Attachment A 2;

b.    the discharge of dredged or fill material to waters of the United States except as authorized by a permit. 2013 MS4 Permit, Attachment A 1.3; 2009 MS4 Permit, Attachment A 3;

c.    the dumping, deposition, or discharge of waste directly into waters of the state, or adjacent to such waters where waste may be transported into the waters. 2013 MS4 Permit, Attachment A 1.7; 2009 MS4 Permit, Attachment A 7; and

d.    the discharge to a storm water conveyance system that is not composed entirely of "storm water." 2013 MS4 Permit, Attachment A 1.8; 2009 MS4 Permit, Attachment A 8.

136.    Compliance with Discharge Prohibitions A.1.a and Receiving Water Limitation A.2.a of the MS4 Permit is achieved "through the timely implementation of control measures and other actions as specified Provisions B [Water Quality Improvement Plans] and E [Jurisdictional Runoff Management Programs] of this Order, including any modifications." 2013 MS4 Permit, Provision A.4.; *see also* 2009 MS4 Permit, Discharge Provisions A.3.

### 3.    MS4 Permit Requirement for Municipalities to Have Legal Enforcement Authority

137.    In addition to its discharge prohibitions and controls on the City's own activities, the MS4 Permit requires the City to "establish, maintain, and enforce adequate legal authority within its jurisdiction to control pollutant discharges into and from its MS4 through statute, ordinance, permit, contract, order or similar means." 2013 MS4 Permit, Provision E.1.a.; 2009 MS4 Permit, Discharge Provisions E.1.; s*ee also* 40 C.F.R. § 122.26(d)(2)(vi)(B)(1).

138.    As noted above, the MS4 Permit demands that the City maintain adequate legal authority to, at a minimum, "prohibit and eliminate all illicit discharges and illicit

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

connections to the MS4." 2013 MS4 Permit, Provision E.1.a.(1); 2009 MS4 Permit, Discharge Provisions E.1.c.; *see also* 40 C.F.R. § 122.26(d)(2)(i)(B) (Dec. 21, 2015).

139.   The City's legal authority must also control the discharge of spills, dumping, or disposal of materials other than storm water into its MS4. 2013 MS4 Permit, Provision E.1.a.(3); 2009 MS4 Permit, Discharge Provisions E.1.d.

140.   The City's authority must require the use of best management practices ("BMPs") to prevent or reduce the discharge of pollutants in storm water *from* its MS4 to the maximum extent practicable. 2013 MS4 Permit, Provision E.1.a.(7).

141.   The City's authority must also require the use of BMPs to prevent or reduce the discharge of pollutants *into* MS4s from storm water to the maximum extent practicable. 2009 MS4 Permit, Discharge Provisions E.1.i.

142.   In addition, the City must have the authority to, at a minimum, ensure compliance with its own regulatory efforts to effectively prohibit non-storm water discharges and either eliminate those discharges to their MS4 or require those dischargers to obtain their own separate NPDES permit. 2013 MS4 Permit, Provision E.1.a.(9).; *see also Id.*, Attachment F at F-40; 2009 MS4 Permit, Discharge Provisions E.1.e.

143.   The MS4 Permit requires that the City submit a statement certifying that it has "taken the necessary steps to obtain and maintain full legal authority within its jurisdiction to implement and enforce each of the requirements in the [MS4 Permit]." 2013 MS4 Permit, Provision E.1.b.; 2009 MS4 Permit, Discharge Provisions E.2.

## C.   Dredge and Fill Permits

### 1.   Clean Water Act Section 404(a) Requirements for Discharging Dredged or Fill Material

144.   Section 404(a) of the Clean Water Act, 33 U.S.C. § 1344(a), establishes an Army Corps-administered permit program for the discharge of dredged or fill material into waters of the United States.

/ / /

145.   Section 404 requirements are distinct from, and in addition to, the NPDES permit framework in Section 402, 33 U.S.C. § 1342.

146.   Section 404(a) of the Clean Water Act, 33 U.S.C. § 1344(a), prohibits the "discharge of a pollutant" into waters of the United States, except in compliance with permit provisions in the Act.

147.   The Act broadly defines the term "pollutant" to include dredged spoil, rock, sand, and agricultural waste discharged into water. 33 U.S.C. § 1362(6).

148.   The "discharge of fill material" is defined as "the addition of fill material into waters of the United States," including, but not limited to, infrastructure construction fill, causeway or road fills, and "site development fills for recreational, industrial, commercial, residential, or other uses." 33 C.F.R. § 323.2(f) (Dec. 30, 2008).

149.   "Fill material" refers to material that replaces aquatic area with dry land or of changing the bottom elevation of a waterbody. 33 U.S.C. § 323.2(e)(1).

150.   "Dredged material" means "material that is excavated or dredged from waters of the United States." 33 C.F.R. § 323.2(c).

151.   The Army Corps has asserted jurisdiction over San Juan Creek and onsite tributaries (shown in Exhibit D) at the Riding Park.

152.   The Army Corps has the authority to issue individual permits or "general permits on a state, regional or nationwide basis for any category of activities involving discharges of dredged or fill material" (both known as a "Section 404 Permit"). 33 U.S.C. § 1344(e)(1).

153.   Regional permits are a type of general permit issued by a Division or District Engineer that may require case-by case reporting and acknowledgement. 33 C.F.R. § 325.5(c)(1).

154.   The Army Corps has issued a general permit, Regional General Permit 74 ("RGP 74"), as the framework for the San Juan Creek/Western San Mateo Creek Watersheds Special Area Management Plan ("Special Area Management Plan").

/ / /

155.   While the Riding Park's jurisdictional waters (seen on Exhibit D) fall within RGP 74 and qualify for a permit under its terms, San Juan Creek does not and does not qualify for this abbreviated permitting. RGP 74, Figure 10.

156.   Therefore, any dredging or discharge of dredge and fill materials in San Juan Creek requires a party to undergo the ordinary, individual permitting process under Section 404.

157.   For the Riding Park, the Special Area Management Plan permitting framework uses the RGP and new letters of permission procedures as an abbreviated means of processing regional Section 404 permits. RGP 74, 3; *See also* 33 U.S.C. § 325.5(b)(2).

158.   To obtain the necessary authorization for dredge and fill activities, RGP 74 requires prior written approval from the Army Corps' Los Angeles District Office stating that the project complies with the terms and conditions of the RGP.

159.   Among its requirements, RGP 74 prohibits the discharge of fill materials, including trash and debris, into jurisdictional waters. RGP 74, General Condition 7.

160.   RGP 74 also requires the applicant to adopt measures to prevent potential pollutants from entering the watercourse. RGP 74, General Condition 10.

161.   Failure to comply with RGP 74's terms and conditions violates Section 404 and may result in revocation, suspension, or modification of the RGP authorization and the assessment of civil penalties. RGP 74, Compliance.

> **2.**      **Clean Water Act Section 401's Requirement for State Water Quality Certification before Discharge of Material into Waters of the United States.**

162.   Section 401(a)(1) of the Clean Water Act, 33 U.S.C. § 1341(a)(1), requires that any application to the Army Corps for a Section 404 permit must include a "certification from the State in which the discharge originated or will originate…that any…discharge will comply with [other sections of the Clean Water Act]."

/ / /

163.    Before the Army Corps can issue a Section 404 permit, the state must certify the project is compliant with local Basin Plans and water quality objectives. 33 U.S.C. § 1341(a)(1).

164.    This certification from the state is known as Section 401 Certification.

165.    Section 404 permits rely upon, and are required to, incorporate any conditions imposed by a state's water quality certification. 33 U.S.C. § 1341(a)(1).

166.    The Clean Water Act allows for citizen enforcement for the failure to obtain a state water quality certification under Section 401(a) of the Act. 33 U.S.C. § 1365(f)(5).

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**AGAINST DEFENDANT CITY OF SAN JUAN CAPISTRANO**
**Failure to Effectively Prohibit Discharges of Non-Storm Water into the
MS4 in Violation of the MS4 Permits and the Clean Water Act.
33 U.S.C. §§ 1311(a), 1342(p), 1365(a) and 1365(f)**

167.    Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

168.    The City is an owner and/or operator of the City MS4.

169.    The City has failed to effectively prohibit non-stormwater discharges into the MS4 originating from the Riding Park.

170.    The City has failed to develop an adequate Jurisdictional Runoff Management Plan to detect and eliminate illicit discharges and improper disposal into the MS4.

171.    The City has failed to implement an adequate Jurisdictional Runoff Management Plan to detect and eliminate illicit discharges and improper disposal into the MS4.

172.    The City has failed to enforce its legal authority to eliminate illicit discharges and connections to the MS4.

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

173.   Upon information and belief, Coastkeeper alleges that the Riding Park has discharged non-storm water to the City MS4 on multiple occasions since March 31, 2012.

174.   At a minimum, the City has failed to effectively prohibit the discharge of non-storm water to the City MS4 on every occasion that non-storm water from horse wash racks is discharged to the City MS4.

175.   The City has also failed to effectively prohibit the discharge of non-storm water to the Riding Park's jurisdiction waters on every occasion that sediment, trash, bedding, and other non-storm water is discharged to the MS4.

176.   Upon information and belief, Coastkeeper alleges that the Riding Park does not possess its own separate NPDES permit under which it may discharge non-storm water.

177.   Each day since March 31, 2012 to the present that the City failed to effectively prohibit non-storm water discharges from the Riding Park to San Juan Creek is a separate and distinct violation of the Permit's prohibition on non-stormwater discharges. Discharge Prohibition B.1. of the 2009 MS4 Permit and see 33 U.S.C. § 1311(a).

178.   Each day since March 31, 2012 to the present that the City failed and continues to fail to effectively prohibit non-storm water discharges from the Riding Park to the City MS4 is a separate and distinct violation of the Permit's prohibition on non-stormwater discharges. Discharge Prohibition A.1.b of the 2013 MS4 Permit; *see also* 33 U.S.C. § 1311(a).

179.   By committing the acts and omissions alleged above, the City is subject to an assessment of civil penalties for each and every violation of the Clean Water Act occurring from March 31, 2012 to the present. See 33 U.S.C. §§ 1319(d), 1365; and 40 C.F.R. § 19.4 (Jan.15, 2017).

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

180.   An action for injunctive relief is authorized by Clean Water Act Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

181.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against Defendant City as set forth below.

## SECOND CAUSE OF ACTION

### AGAINST DEFENDANT CITY OF SAN JUAN CAPISTRANO
**Discharges Causing and Contributing to Exceedances of Water Quality Standards in Violation of the MS4 Permits and Clean Water Act
33 U.S.C. §§ 1311(a), 1342(p), 1365(a) and 1365(f)**

182.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

183.   The Regional Board's Basin Plan establishes a number of water quality standards for inland surface waters and coastal waters in the San Juan Creek watershed, all incorporated by reference into the MS4 Permit. The MS4 Permit prohibits discharges that cause or contribute to exceedances of these water quality standards.

184.   The City has caused and contributed to, and continues to cause and contribute to, exceedances of water quality standards in San Juan Creek and the drainage tributaries to the Pacific Ocean.

185.   As a result of its control of land areas that generate polluted storm water and non-storm water, the City has caused and contributed to, and is causing and contributing to, exceedances of water quality standards in San Juan Creek and drainage to the Pacific Ocean.

186.   From March 31, 2012 to the present, each day that the City has caused or contributed to exceedances of water quality standards is a separate and distinct violation of the MS4 Permit and 33 U.S.C. §§ 1311(a) and 1342(p).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

187.   These violations are ongoing and continuous. In light of the City's history of violations and the nature of the violations, the City will continue to violate these requirements in the future unless and until enjoined from doing so.

188.   By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each violation of the 33 U.S.C. § 1311(a).  *See* 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4 (Jan.15, 2017).

189.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Defendant is subject to an injunction ordering them to cease activities in violation of the Clean Water Act.

190.   Allowing the commission of the acts and omissions alleged above to continue will irreparably harm Coastkeeper and its members, for which they have no plain, speed, or adequate remedy at law

WHEREFORE, Plaintiff prays for judgment against Defendant City as set forth below.

### THIRD CAUSE OF ACTION

### AGAINST ALL DEFENDANTS
**Unpermitted Dredge and/or Fill Activities at the Riding Park in Violation of Sections 301(a) and 404 of the Clean Water Act**
**33 U.S.C. §§ 1311(a), 1344, 1365(a) and 1365(f)**

191.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

192.   Coastkeeper is informed, believes, and thereon alleges, that on multiple occasions, Defendants and/or persons acting at their direction, or with Defendants' consent and/or knowledge, discharged fill material from point sources into waters of the United States at the Riding Park as described in Paragraphs 73-86, including the impacted onsite tributaries identified in Exhibit D.

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

193.   Upon information and belief, Coastkeeper alleges that since at least March 31, 2012, Defendants have discharged, and continue to discharge, fill material from the Riding Park into waters of the United States without a Section 404 permit from the Army Corps.

194.   Defendants' action resulted in the unpermitted filling of more than 0.1 acres of impacted jurisdictional waters. *See* 33 U.S.C. § 1344.

195.   Defendants will continue to violate the Clean Water Act each day they discharge fill material into San Juan Creek and at the Riding Park without a Section 404 permit from the Army Corps.

196.   Each day that Defendants discharge fill without obtaining the required 404 Permit is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 § U.S.C. 1311(a).

197.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each violation of 33 U.S.C.§ 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (Jan.15, 2017).

198.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Defendants are subject to an injunction ordering them to cease violating the Clean Water Act.

199.   Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and our members, for which they have no plain, speed, or adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

/ / /

/ / /

/ / /

# FOURTH CAUSE OF ACTION

## AGAINST ALL DEFENDANTS
**Unpermitted Dredge and/or Fill Activities at the Riding Park in
Violation of Sections 301(a) and 401 of the Clean Water Act
33 U.S.C. §§ 1311(a), 1341, 1365(a) and 1365(f)**

200.    Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

201.    Coastkeeper is informed, believes, and thereon alleges, that on more than one occasion, Defendants and/or persons acting at their direction, or with Defendants' consent and/or knowledge, discharged fill material from point sources into waters of the United States at the Riding Park as described in Paragraphs 73-86, including the impacted onsite tributaries identified in Exhibit D.

202.    Coastkeeper is informed and believes, and thereon alleges, that at least since March 31, 2012, Defendants have been discharging fill material from the Riding Park without seeking or obtaining a Section 401 Certification from the Regional Board.

203.    Defendants will continue to be in violation of the Clean Water Act each day they dredge and/or discharge fill without a Section 401 Certification.

204.    Each day that Defendants discharge fill without obtaining the required 401 Certification is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 § U.S.C. 1311(a).

205.    By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each violation of 33 U.S.C.§ 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (Jan.15, 2017).

206.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Defendants are subject to an injunction ordering them to cease violating the Clean Water Act.

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

207.   Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and its members, for which they have no plain, speed, or adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## FIFTH CAUSE OF ACTION

### AGAINST DEFENDANT CITY OF SAN JUAN CAPISTRANO
**Unpermitted Dredge and Fill Activities at the Arizona Crossing in Violation of Sections 301(a) and 404 of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1344(a), 1365(a) and 1365(f)**

208.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

209.   Coastkeeper is informed, believes, and thereon alleges, that since at least March 31, 2012, the City has dredged and has been discharging fill from the Arizona Crossing into waters of the United States without a Section 404 permit from the Army Corps.

210.   Coastkeeper is informed, believes, and thereon alleges, the City's actions and/or the actions of persons acting at their direction or with their consent and/or knowledge at the Arizona Crossing resulted in the filling of more than 0.1 acres of waters of the United States without a Section 404 permit, in violation of Section 301(a) of the Clean Water Act, 33 U.S.C.A. § 1311(a).

211.   Coastkeeper is informed, believes, and thereon alleges, that the City's unpermitted discharge of fill material in violation of the Clean Water Act is ongoing at the Arizona Crossing.

212.   The City will continue to be in violation of the Clean Water Act each day it discharges fill at the Arizona Crossing without a Section 404 permit.

213.   Each day the City discharges fill or attempts to dredge San Juan Creek to repair, remove, or replace the Arizona Crossing without obtaining a Section 404 permit is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

214.   By committing the acts and omissions alleged above, Defendant City is subject to an assessment of civil penalties for each violation of the Act. *See 33* U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4 (Jan.15, 2017).

215.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Defendant City is subject to an injunction ordering it to cease violating the Clean Water Act.

216.   Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and its members, for which they have no plain, speed, or adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendant City as set forth below.

## SIXTH CAUSE OF ACTION

### AGAINST DEFENDANT CITY OF SAN JUAN CAPISTRANO
**Unpermitted Dredge and/or Fill Activities at the Arizona Crossing in Violation of Sections 301(a) and 401 of the Clean Water Act. 33 U.S.C. §§ 1341, 1365(a) and 1365(f)**

218.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

219.   Coastkeeper is informed, believes, and thereon alleges, that since at least March 31, 2012, the City has dredged and/or is discharging fill from the Arizona Crossing into waters of the United States without obtaining a Section 401 water quality certification from the Regional Board.

220.   Coastkeeper is informed, believes, and thereon alleges, that the City's unpermitted discharge fill material is ongoing at the Arizona Crossing.

221.   The City will continue to be in violation of the Clean Water Act each day it discharges fill or dredges San Juan Creek in order to replace, remove, or repair the Arizona Crossing without a Section 401 Certification.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

222.   Each day that the City discharges fill material without obtaining a Section 401 Certification is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

223.   By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each violation of the Act. *See 33* U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4 (Jan.15, 2017).

224.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Defendant is subject to an injunction ordering them to cease violating the Clean Water Act.

225.   Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and our members, for which they have no plain, speed, or adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendant City as set forth hereafter.

## VII.   RELIEF REQUESTED

226.   Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   A Court order declaring the City to have violated and to be in violation of the MS4 Permit and Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342(p) for discharging non-storm water;

b.   A Court order declaring the City to have violated and to be in violation of the MS4 Permit and Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p), for discharges causing and contributing to exceedances of water quality standards;

c.   A Court order declaring the City to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for engaging in dredge and fill activities at the Arizona Crossing without a Clean Water Act permit;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

1        d.     A Court order declaring the Defendants have violated and are in

2  violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for

3  discharging dredge and fill at the Riding Park without a 404 permit;

4        e.     A Court order declaring Defendants have violated and are in violation

5  of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for engaging in dredge

6  and fill activities without a 401 Certification pursuant to the Act;

7        f.     A Court order permanently enjoining Defendants from discharging or

8  causing the discharge of dredged or fill material or other pollutants into any waters of

9  the United States except in compliance with a 404 permit;

10       g.     A Court order directing Defendants to undertake measures, at

11  Defendants' own expense and at the direction of the Regional Board and Army Corps,

12  to effect complete restoration of waters of the United States at the Riding Park and

13  Arizona Crossing and to conduct on-site and off-site mitigation for unauthorized

14  impacts to waters of the United States, as appropriate;

15       h.     A Court order assessing civil monetary penalties for each violation of

16  the Act at $37,500 per day per violation for violations occurring from March 31, 2012

17  through November 2, 2015, and $52,414 per day per violation for violations occurring

18  after November 2, 2015, as permitted by 33 U.S.C. § 1319(d) and Adjustment of Civil

19  Monetary Penalties for Inflation, 40 C.F.R. § 19.4 (Jan.15, 2017);

20       i.     A Court order awarding Plaintiff its reasonable costs of suit, including

21  attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the

22  Clean Water Act, 33 U.S.C. § 1365(d); and

23       j.     Any other relief as this Court may deem appropriate.

24  / / /

25

26  / / /

27

28  / / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND

# VIII. __DEMAND FOR JURY TRIAL__

Plaintiff hereby requests a jury trial on all issues raised in this Complaint.

Dated:        June 2, 2017                          Respectfully submitted,


LAW OFFICE OF JENNIFER F. NOVAK


_____Jennifer. F. Novak_____ ___
Jennifer F. Novak
Attorney for Plaintiff
Orange County Coastkeeper

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; JURY DEMAND